1   Mark B. Mizrahi Esq. (State Bar #179384)
mmizrahi@wrslawyers.com
2   Lance M. Pritikin, Esq. (State Bar #250754)
lpritikin@wrslawyers.com
3   Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd., 9th Floor
4   Los Angeles, California 90064
PH:  310-478-4100 Ext. 270
5   FAX: 310-478-6363

6
7   Attorneys for Plaintiff,
International Oddities, Inc.

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10  International Oddities, Inc., a California   )   Case No.:  CV 12-2259-CAS (RZx)
    corporation,                                )
11                                              )
                  Plaintiff,                    )
12                                              )
          vs.                                   )   **PERMANENT INJUNCTION WITH
13                                              )   RESPECT TO DEFENDANT DEREK
    Domestic Oddities Wholesale                 )   L. DURBIN, AN INDIVIDUAL**
14  Distribution LLC, a Nevada limited          )
    liability company, Eric C. Fontenelle, an   )
15  individual, Rick Chervenak, an              )
    individual, Brett M. McSpadden, an          )
16  individual, and Derek L. Durbin, an         )
    individual,                                 )
17                                              )
                  Defendants.                   )
18  _____ )

19

20          WHEREAS, plaintiff International Oddities, Inc. ("IO" or "Plaintiff") has filed

21  its complaint in the above-entitled action against Defendant DEREK L. DURBIN, an

22  individual ("Durbin"), among the various other above-named defendants (collectively

23  "Defendants") for trademark infringement, unfair competition, false designation of

24  origin, dilution, and cyberpiracy, among other related causes, concerning IO's

25  federally registered trademarks INTERNATIONAL ODDITIES® and BLACK

26  WIDOW®;

27          WHEREAS, Defendant Domestic Oddities Wholesale Distribution LLC, a

28  Nevada limited liability company ("Domestic Oddities") is in the business of

marketing and selling various products over the Internet and through distributors and retail outlets, including, without limitation, "herbal incense," sometimes referred to generically as "potpourri," in part, through websites owned, operated, or hosted by one or more of the Defendants and/or their affiliates;

WHEREAS, in exchange for IO's dismissal of the complaint in this Action, without prejudice, as to Durbin, only, Durbin and IO have stipulated to entry of a permanent injunction as to Durbin, on the following terms and conditions;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     This Court has jurisdiction of the subject matter of this litigation and over Mr. Durbin's person.

2.     Mr. Durbin waives the right to appeal from entry of this Permanent Injunction With Respect to Defendant Derek L. Durbin, an Individual ("Permanent Injunction" or "Order").

3.     Plaintiff is a corporation organized under the laws of the State of California, having an address at 927 Deep Valley Drive, No. 163, Rolling Hills, CA 90274.

4.     Defendant Derek L. Durbin is an individual residing in Slidell, Louisiana.

5.     IO's United States Trademark Registration No. 3,001,848 for the mark INTERNATIONAL ODDITIES in International Class 034 for "non-tobacco smoking products, namely, herbal tobacco substitute, not for medical use," ("Plaintiff's INTERNATIONAL ODDITIES Registration") is valid and subsisting and is owned by IO.  This registration has since been granted incontestable status by the USPTO.

6.     For approximately 17 years, Plaintiff has continuously used its INTERNATIONAL ODDITIES trade name and trademark alone and in combination with other words and symbols for its herbal smoking and dietary supplement products. International Oddities' goods have been sold and marketed throughout the United

States under the INTERNATIONAL ODDITIES mark.  By virtue of such use, Plaintiff has also acquired common law rights in the trademark and trade name INTERNATIONAL ODDITIES.  Plaintiff's INTERNATIONAL ODDITIES Registration and its common law rights in the INTERNATIONAL ODDITIES mark are collectively referred to herein as "Plaintiff's INTERNATIONAL ODDITIES mark."

7.     IO's United States Trademark Registration No. 3,168,188 for the mark BLACK WIDOW in International Class 034, relating to "non-tobacco smoking products, namely, herbal tobacco substitute, not for medical use," ("Plaintiff's BLACK WIDOW Registration") is valid and subsisting and is owned by IO.  This registration has since been granted incontestable status by the USPTO.  Plaintiff has also acquired common law rights in the mark/name BLACK WIDOW by virtue of its extensive use and advertising of goods under this mark/name.  Plaintiff's BLACK WIDOW Registration and its common law rights in the BLACK WIDOW mark/name are collectively referred to herein as "Plaintiff's BLACK WIDOW mark."

8.     Plaintiff's BLACK WIDOW mark and Plaintiff's INTERNATIONAL ODDITIES mark are collectively referred to herein as the "IO TRADEMARKS."

9.     As a result of Plaintiff's extensive use and advertising, the IO TRADEMARKS have become well known to the industry and the purchasing public to designate herbal smoking-related products, among other products, originating from IO.

10.     IO has superior rights to exclusive use of the IO TRADEMARKS vis-à-vis Durbin.

11.     Durbin shall not in the future file or maintain an application for registration or a registration of any mark comprising or including the IO TRADEMARKS or any reproductions, copies, counterfeits or colorable imitations thereof or any terms confusingly similar thereto, including without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and/or "WHITE WIDOW,"

1   with the United States Patent and Trademark Office or any other governmental or

2   state authority.

3        12.    Subject to the provisions of Paragraph 15, upon entry of this Consent

4   Judgment and Permanent Injunction, Durbin and each of his employees, agents,

5   servants, attorneys, successors and assigns and any entity he has an ownership interest

6   in (unless it is a publicly traded company in which it/he owns or controls less than 5%

7   of issued and outstanding voting stock, including any stock that could be converted

8   into voting stock), controls directly or indirectly or for which he is an officer, director,

9   or provides advice or direction, and all those in active concert and participation, or

10  affiliated with one or more of them or under authority of Mr. Durbin who receive

11  actual notice of this Permanent Injunction by personal service or otherwise, are hereby

12  enjoined and restrained from:

13       (a)    making, contributing to the making, or inducing others to

14  make any use of a name, tradename, mark, URL, domain name, or

15  computer code which comprises or includes one or more of the IO

16  TRADEMARKS or any reproduction, copy, counterfeit or colorable

17  imitation thereof or any term(s) confusingly similar thereto, including

18  without limitation the marks "DOMESTIC ODDITIES," "BLACK

19  WIDOW," and/or "WHITE WIDOW," especially any such use on or in

20  connection with herbal incense, "potpourri," herbal tobacco substitutes or

21  any smoking-related products and accessories (including, without

22  limitation, lighters, pipes, matchbooks, or any similar goods), sold,

23  offered for sale, distributed, or imported into the United States or

24  otherwise advertised, marketed or promoted;

25       (b)    offering for sale, selling, distributing, marketing, importing,

26  advertising, promoting or giving away, or causing to be offered for sale,

27  sold, distributed, marketed, imported, or given away any goods bearing

28  one or more of the IO TRADEMARKS or any reproduction, copy,

counterfeit or colorable imitation thereof or any term(s) confusingly similar thereto, including without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and/or "WHITE WIDOW";

(c)     shipping, delivering, distributing, returning, or otherwise disposing of in any manner other than destruction of packaging, or from causing to be shipped, delivered, distributed, returned, or disposed of (other than destroying packaging), products bearing one or more of the IO TRADEMARKS or any reproduction, copy, counterfeit or colorable imitation thereof or any term(s) confusingly similar thereto, including without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and/or "WHITE WIDOW";

(d)     displaying, advertising, or soliciting purchases, or causing to be displayed, advertised, or solicited, any product under one or more of the IO TRADEMARKS or any reproduction, copy, counterfeit or colorable imitation thereof or any term(s) confusingly similar thereto, including without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and/or "WHITE WIDOW," over the Internet or otherwise;

(e)     registering, maintaining, promoting, using, trafficking in, or engaging in any activities (directly or indirectly) with any domain name, web page name or URL which includes one or more of Plaintiff's trademarks (listed in **Exhibit 1** hereto) or any reproductions, counterfeits, copies or colorable imitations thereof or any terms confusingly similar thereto, including without limitation the <domesticoddities.com>, <domesticoddities.net> and <domesticoddities.org> domain names;

(f)     maintaining, operating, or using (whether directly or indirectly) or inducing others (including, without limitation Affiliates) to maintain, operate, or use any web-page, home page, web site, website

content (including, without limitation, that which appears on "hidden pages"), any code whatsoever (including but not limited to metatags, HTML, XTML, any computer code, domain names, URLs, sub pages, extensions, links, or any division or portion thereof, signs, banner ads, or any other visual media used in connection with any goods/business) that contains one or more of the IO TRADEMARKS or any reproduction, copy, counterfeit or colorable imitation thereof or any term(s) confusingly similar thereto, including without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and/or "WHITE WIDOW" (as used in this document, the capitalized term "Affiliates" means third-party owned websites/domain names that link to one or more websites owned, hosted, and/or operated by one of more of the Defendants);

(g) obtaining, registering, transferring, assigning, licensing, authorizing use, or otherwise displaying (directly or indirectly) of any domain name or URL which includes one or more of Plaintiff's trademarks (listed in **Exhibit 1** hereto) or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation the <domesticoddities.com>, <domesticoddities.net> and <domesticoddities.org> domain names, or undertaking any such activities to promote or utilize such domain names;

(h) identifying yourself (directly or through his Affiliates) or any of your products over the telephone or by any other media (including the Internet) or printed matter as "International Oddities" or any confusingly similar term, or any reproduction, counterfeit, copy or colorable imitation of the "International Oddities" designation, including without limitation the mark/trade-name "DOMESTIC ODDITIES";

(i)      infringing, inducing others to infringe, or contributing to the infringement of any of Plaintiff's trademarks (listed in **Exhibit 1** hereto) or otherwise engaging in unfair competition with IO in any manner or engaging in any conduct tending to falsely represent or likely to confuse, mislead or deceive suppliers, purchasers, or any member of the public into thinking that one or more of the Defendants or their Affiliates or their products originate from or are affiliated with IO or that IO has otherwise sponsored, approved, or licensed any products or services of any of the Defendants or their Affiliates;

(j)      passing off, inducing or enabling others (including, without limitation, any of the Defendants' Affiliates) to sell or pass off any product not Plaintiff's or not produced under the control and supervision of Plaintiff as approved by Plaintiff for sale under one or more of Plaintiff's trademarks (listed in **Exhibit 1** hereto); and

(k)      committing or contributing to any acts calculated to cause purchasers to believe that any products not Plaintiff's are those sold under the control and supervision of Plaintiff, or are sponsored or approved or connected with, guaranteed or produced under the control and supervision of Plaintiff, or otherwise infringing, inducing others to infringe, or contributing to the infringement of any of Plaintiff's trade names or Plaintiff's trademarks (listed in **Exhibit 1** hereto).

13.    IT IS FURTHER ORDERED that, subject to the provisions of Paragraph 15 below, upon entry of this Consent Judgment and Permanent Injunction, Durbin shall eliminate (and not thereafter resume use of) all references to or mentions of the IO TRADEMARKS or any reproduction, copy, counterfeit or colorable imitation thereof or any term(s) confusingly similar thereto, including without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and/or "WHITE WIDOW," from all labels, products, packaging, website content (including, without limitation,

that which appears on "hidden pages"), any code whatsoever including but not limited to metatags, HTML, XTML, any computer code, domain names, URLs, sub pages, extensions, links, or any division or portion thereof, signs, banners and all other visual media under his control and shall terminate all advertising, under his control, bearing one or more of the IO TRADEMARKS or any reproduction, copy, counterfeit or colorable imitation thereof or any term(s) confusingly similar thereto, including without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and "WHITE WIDOW," from all third party media (including, without limitation, that of Defendants' Affiliates), including print advertising and the Internet.

14.    IT IS FURTHER ORDERED that, subject to the provisions of Paragraph 15 below, upon entry of this Consent Judgment and Permanent Injunction, Durbin shall eliminate any content, including links, from any and all websites which he owns, controls, or operates that causes or tends to cause an Internet search engine to list or report a website – not selling goods that originate from or are otherwise authorized by Plaintiff, including, without limitation, Defendants' "DOMESTIC ODDITIES," "BLACK WIDOW," or "WHITE WIDOW," products – based on a search query that includes one of Plaintiff's trademarks (listed in **Exhibit 1** hereto) or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto.

15.    Durbin claims to have been operating a business under the trade name "Derek Durbin Enterprises, LLC d/b/a White Widow Novelties."  To the extent that Durbin is using the term "White Widow" as part of his business/trade name on printed checks, printed, printed business cards, and printed stationery, already in existence as of July 13, 2012, Durbin shall have 30 days from entry of this Order to remove all mention of the term "White Widow" from his existing inventory of such documents, after which any remaining inventory shall be destroyed or be relabeled to eliminate all traces of that term, as required under the provisions of this Consent Judgment and

Permanent Injunction.  This 30 day grace period does not apply to any item or medium not listed in this paragraph.

16.    Durbin shall within ten (10) days of entry of this Order voluntarily cancel U.S. Registration No. 3,937,072 for the mark WHITE WIDOW.  In the event that for whatever reason Durbin fails to file the request for voluntary cancellation or the request for voluntary cancellation is not heeded by the United States Patent and Trademark Office ("USPTO"), the Commissioner of Trademarks at the USPTO is hereby ordered to promptly cancel U.S. Registration No. 3,937,072 for the mark WHITE WIDOW upon receipt of this Order.

17.    Defendant Derek L. Durbin shall within ten (10) days of entry of this Order expressly abandon U.S. Application No. 85326969 for the mark WHITE WIDOW, pending before the USPTO.  In the event that Mr. Durbin fails to abandon U.S. Application No. 85326969, as ordered, the Commissioner of Trademarks at the USPTO shall cause U.S. Application No. 85326969 to be abandoned.

18.    In the event that Plaintiff believes that Durbin has not complied with one or more of the terms set forth in this Permanent Injunction, then, in lieu of Central District Local Rule 7-3 procedures, Plaintiff shall notify Durbin in writing specifying the nature of such noncompliance.  Within seven (7) calendar days from receipt of such notice from Plaintiff, Durbin shall notify Plaintiff by written affidavit whether or not the activity complained of was/is connected with any product or activity originating from Durbin or his agents.  In the event that, despite said written affidavit, Plaintiff continues to believe that Durbin has not complied with his duties under this Permanent Injunction, or if the parties have not otherwise resolved the issue of noncompliance within that time to Plaintiff's satisfaction, then Plaintiff may initiate appropriate legal action.  If Plaintiff notifies Durbin of more than one instance of noncompliance within a one-year period, then Plaintiff shall be relieved of its duty to provide notice to Defendants under this paragraph or otherwise comply with the requirements of Local Rule 7-3 with regard to future violations.

19.     This Court shall retain jurisdiction to construe, enforce, and implement this Permanent Injunction.

20.     Plaintiff may issue subpoenas, pursuant to Fed. R. Civ. P. Rules 26 through 45, as appropriate to enable it to police and enforce compliance with this Permanent Injunction.

21.     The prevailing party in any proceeding to enforce the terms of this Consent Judgment and Permanent Injunction shall be entitled to recover the attorneys' fees and costs incurred therewith.

Dated: August 9, 2012

The Honorable Christina A. Snyder,
United States District Judge

1032284.2

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

## <u>EXHIBIT 1</u>

Reg. No. 3,001,848, registered on September 27, 2005 for the mark INTERNATIONAL ODDITIES; Reg. No. 2,284,977, registered on October 12, 1999 for the mark ULTRA WIZARD SMOKE; Reg. No. 3,120,347, registered on July 25, 2006 for the mark SKYSCRAPER; Reg. No. 3,186,133, registered on December 19, 2006 for the mark KRYPTO; Reg. No. 3,057,327, registered on February 7, 2006 for the mark DRO; Reg. No. 2,295,413, registered on November 30, 1999 for the mark STASHISH; Reg. 3,168,188, registered on November 7, 2006 for the mark BLACK WIDOW; Reg. 3,168,157, registered on November 7, 2006 for the mark STUNK; Reg. 3,053,633, registered on January 31, 2006 for the mark RASTA SMOKE; A'HIA for non-tobacco smoking-related products; BÁHLI BUBBLE BUD for non-tobacco smoking-related products; IO for non-tobacco smoking-related products; AFGANISH for non-tobacco smoking-related products; ALBINO RHINO for non-tobacco smoking-related products; BC DRO for non-tobacco smoking-related products; BLONDE STASHISH for non-tobacco smoking-related products; CRYSTAL BALL for non-tobacco smoking-related products; GOTALITE SPECIAL for non-tobacco smoking-related products; HERBAL BLACK "O" for non-tobacco smoking-related products; I.O. DRO for non-tobacco smoking-related products; KILLER STUNK for non-tobacco smoking-related products; KRYPTONITE SPECIAL for non-tobacco smoking-related products; MELTDOWN for non-tobacco smoking-related products; NE146 BUD for non-tobacco smoking-related products; O.P.N. for non-tobacco smoking-related products; O'REAM SMOKE for non-tobacco smoking-related products; PANAMA GOLD for non-tobacco smoking-related products; SHOTGUN 6-PACK for non-tobacco smoking-related products; SMOKE RING SPECIAL for non-tobacco smoking-related products; STANISH for non-tobacco smoking-related products; STANISH BLONDE for non-tobacco smoking-related products; STANISH ORIGINAL for non-tobacco smoking-related products; STANISH RED for non-tobacco smoking-related products; STANISH RESIN OIL for non-tobacco smoking-related products; STASH PACK for non-tobacco smoking-related products; SUPER HEX DROPS for non-tobacco smoking-related products; T-C-3 for non-tobacco smoking-related products; THAI LOPIUM OIL for non-tobacco smoking-related products; TRIPLE DECKER SPECIAL for non-tobacco smoking-related products; T*** STIX for non-tobacco smoking-related products; WIZARD BOX for non-tobacco smoking-related products; WIZARD MACHINE for non-tobacco smoking-related products; WIZARD SMOKE for non-tobacco smoking-related products; A'HIA for non-tobacco smoking products (the "A'HIA mark"); BÁHLI BUBBLE BUD for non-tobacco smoking products (the "BÁHLI mark"); ICONOCLAST'S for herbs

for smoking and various smoking accessories; BLACK BOA for herbs for smoking and various smoking accessories; HAWAIIAN CRUNCH for herbs for smoking and various smoking accessories; BLUNT LOADS for herbs for smoking and various smoking accessories; AFTER BURNER for herbs for smoking and various smoking accessories; DELUXE DUTCH for herbs for smoking and various smoking accessories; Reg. No. 3,642,564, registered on June 23, 2009; and Reg. No. 3,488,483, registered on August 19, 2008.

## __STIPULATION__

1

2   IT IS HEREBY STIPULATED by and between the parties to the within action

3   that the foregoing Permanent Injunction With Respect to Defendant Derek L. Durbin,

4   an Individual may be presented to the Court for approval and, when approved and

5   signed by the Court, may be entered herein, all without further notice, and each party

6   waives all right to seek review and appeal or otherwise therefrom.

7

8   Respectfully submitted,

9

10  Dated: July 30, 2012                    Wolf, Rifkin, Shapiro, Schulman &
                                            Rabkin, LLP
11

12

13

14  By: _____

15  Mark B. Mizrahi (CA Bar No. 179384)

16  *Attorneys for Plaintiff,*
    *International Oddities, Inc.*
17

18

19  Dated: July 13, 2012                    Derek L. Durbin, an Individual

20

21

22  By: _____

23  Derek L. Durbin, an Individual

24  *Defendant Appearing Pro se*

25

26

27

28

1032284.2                                   14