UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| International Oddities, Inc., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Domestic Oddities Wholesale Distribution LLC, a Nevada limited liability company, Eric C. Fontenelle, an individual, Rick Chervenak, an individual, Brett M. McSpadden, an individual, and Derek L. Durbin, an individual,<br><br>　　　　Defendants. | Case No.: CV 12-2259-CAS (RZx)<br><br>**PERMANENT INJUNCTION BY CONSENT WITH RESPECT TO DEFENDANTS DOMESTIC ODDITIES WHOLESALE DISTRIBUTION LLC, A NEVADA LIMITED LIABILITY COMPANY, ERIC C. FONTENELLE, AN INDIVIDUAL, AND BRETT M. MCSPADDEN, AN INDIVIDUAL** |

WHEREAS, plaintiff International Oddities, Inc. ("IO" or "Plaintiff") has filed its complaint in the above-entitled action against defendants Domestic Oddities Wholesale Distribution, LLC ("Domestic Oddities"), Brett M. McSpadden ("McSpadden"), and Eric C. Fontenelle ("Fontenelle") (collectively referred to as "Defendants), among the various other above-named defendants for trademark infringement, unfair competition, false designation of origin, dilution, and cyberpiracy, among other related causes, concerning IO's federally registered trademarks INTERNATIONAL ODDITIES® and BLACK WIDOW®;

WHEREAS, Defendants are in the business of marketing, selling, and distributing various products over the Internet, including, without limitation, "herbal potpourri," "herbal incense" and smoking accessories, through websites owned, operated, or hosted by one or more of the Defendants and/or their affiliates;

WHEREAS, in exchange for IO's dismissal of the complaint in this Action, without prejudice, as to Defendants, and the terms of the Settlement Agreement between Defendants and IO, Defendants and IO have stipulated to entry of a permanent injunction as to Defendants, on the following terms and conditions;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. This Court has jurisdiction of the subject matter of this litigation and personal jurisdiction over Domestic Oddities, McSpadden, and Fontenelle.

2. Defendants waive the right to appeal from entry of this Permanent Injunction By Consent With Respect To Defendants Domestic Oddities Wholesale Distribution LLC, A Nevada Limited Liability Company, Eric C. Fontenelle, An Individual, And Brett M. Mcspadden, An Individual ("Permanent Injunction" or "Order").

3. Plaintiff is a corporation organized under the laws of the State of California, having an address at 927 Deep Valley Drive, No. 163, Rolling Hills, CA 90274.

4. Domestic Oddities is a limited liability company organized under the laws of the State of Nevada having its principal place of business at 2821 Sisteron Court, Henderson, Nevada 89044.

5. McSpadden is an individual residing at 222 Karen Avenue, Unit 4308, Las Vegas, Nevada 89109.

6. Fontanelle is an individual residing at 222 Karen Avenue, Unit 4308, Las Vegas, Nevada 89109.

7. Plaintiff is the owner of the United States Trademark Registrations and common law trademarks/service-marks (collectively "Plaintiff's Trademarks") listed on **Exhibit 1** hereto.

8. Plaintiff's Trademarks are valid, enforceable, and subsisting.

9. As a result of Plaintiff's extensive use and advertising of the Plaintiff's Trademarks, the Plaintiff's Trademarks have become well known to the industry and the purchasing public to be associated with Plaintiff.

10. Plaintiff has superior rights to exclusive use of the Plaintiff's Trademarks vis-à-vis Defendants throughout the United States.

11. Defendants' uses of the marks DOMESTIC ODDITIES, BLACK WIDOW, and WHITE WIDOW as trademarks, service marks, and domain names, as alleged in the Complaint in this Action, have infringed upon Plaintiff's exclusive rights in a number of marks listed among Plaintiff's Trademarks, specifically, Plaintiff's INTERNATIONAL ODDITIES trademark and service mark and Plaintiff's BLACK WIDOW trademark.

12. Defendants' use of the marks DOMESTIC ODDITIES, BLACK WIDOW, and WHITE WIDOW in connection with their promotion, distribution, and sale of smoking products and other products have created, and continue to create, a likelihood of confusion, deception, and mistake as to the source or origin, sponsorship, affiliation, association, or authorization of Defendants' goods vis-à-vis Plaintiff and as to the sponsorship, affiliation, and association between Defendants and Plaintiff, in violation of 15 U.S.C. §§1114 and 1125(a), California Business and Professional Code Section 17200 et seq., and California common law relating to trademarks, service marks, and trade names.

13. Defendant's conduct constitutes unfair competition and misappropriation of Plaintiff International Oddities' INTERNATIONAL ODDITIES® and BLACK WIDOW® marks and the goodwill associated therewith and constitutes an "unlawful, unfair or fraudulent business act or practice" and/or "unfair, deceptive, untrue or

1  misleading advertising" in violation of California Business and Professional Code
2  Section 17200 et seq. and California common law relating to unfair competition.

3        14.    Defendants' uses and activities constitute dilution of Plaintiff
4  International Oddities' famous mark INTERNATIONAL ODDITIES® in that these
5  activities have diluted and blurred the distinctiveness of Plaintiff International
6  Oddities' mark and otherwise tarnished this mark and diluted its strength and value, in
7  violation of 15 U.S.C. § 1125(c) and under Cal. Bus. & Prof. Code § 14247.

8        15.    The domain names <domesticoddities.com>, <domesticoddities.net> and
9  <domesticoddities.org> are confusingly similar to Plaintiff's International Oddities
10 INTERNATIONAL ODDITIES® mark, especially in light of the high similarity of
11 the parties' respective goods.  Fontenelle's registration of the domain name
12 <domesticoddities.com>, Defendants' Domestic Oddities' use of the domain name
13 <domesticoddities.com>, and McSpadden's registration of the domain names
14 <domesticoddities.net> and <domesticoddities.org> each violates 15 U.S.C. §
15 1125(d).

16       16.    As a direct and proximate result of Defendants' infringing activities as set
17 forth above, Plaintiff International Oddities has been irreparably harmed and damaged
18 in an amount to be ascertained.  This harm includes, without limitation, injury to
19 Plaintiff International Oddities' goodwill and reputation.

20       17.    The harm to Plaintiff International Oddities resulting from the uses and
21 activities of Defendants is irreparable, continuing, not fully compensable by monetary
22 damages.

23       18.    Defendants shall not dispute or contest directly or indirectly, or do or
24 cause to be done any act which in any way contests, impairs or tends to impair the
25 validity or enforceability of the Plaintiff's Trademarks or Plaintiff's exclusive rights in
26 the Plaintiff's Trademarks.

27       19.    Defendants shall immediately abandon/cancel and not in the future file or
28 maintain an application for registration or a registration of any mark comprising or

1  including the Plaintiff's Trademarks or any reproductions, copies, counterfeits or
2  colorable imitations thereof or any terms confusingly similar thereto, including
3  without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and/or
4  "WHITE WIDOW," with the United States Patent and Trademark Office or any other
5  governmental or state authority.

6      20.    Defendants and each of their officers, directors, agents, servants,
7  employees, successors, assigns, attorneys, and any entity that any of the Defendants
8  has an ownership interest in (unless it is a publicly traded company in which it/he
9  owns or controls less than 5% of issued and outstanding voting stock, including any
10 stock that could be converted into voting stock), controls directly or indirectly or for
11 which it/he is an officer, director, or provides advice or direction, and all those
12 persons in active concert, or participation, or affiliated with one or more of them or
13 under authority of one or more of the Defendants who receive actual notice of this
14 Agreement, shall to immediately cease and not resume at any time thereafter:

15     (a)    making, contributing to the making, or inducing others to
16 make any use of a name, trade name, trademark, service mark, URL,
17 domain name, or computer code which comprises or includes one or
18 more of the Plaintiff's Trademarks or any reproduction, copy, counterfeit
19 or colorable imitation thereof or any term(s) confusingly similar thereto,
20 including, without limitation, the marks "DOMESTIC ODDITIES,"
21 "BLACK WIDOW," and/or "WHITE WIDOW," especially, without
22 limitation, any such use on or in connection with herbal incense,
23 "potpourri," dietary supplements, herbal tobacco substitutes or any
24 smoking-related products or accessories (including, without limitation,
25 lighters, pipes, matchbooks, or any similar goods), sold, offered for sale,
26 distributed, or imported or otherwise advertised, marketed or promoted;

27     (b)    offering for sale, selling, distributing, marketing, importing,
28 advertising, promoting or giving away, or causing to be offered for sale,

1  sold, distributed, marketed, imported, or given away any goods bearing
2  one or more of the Plaintiff's Trademarks or any reproduction, copy,
3  counterfeit or colorable imitation thereof or any term(s) confusingly
4  similar thereto, including without limitation the marks "DOMESTIC
5  ODDITIES," "BLACK WIDOW," and/or "WHITE WIDOW";
6      (c)    shipping, delivering, distributing, returning, or otherwise
7  disposing of in any manner other than destruction of packaging, or from
8  causing to be shipped, delivered, distributed, returned, or disposed of
9  (other than destroying packaging), products bearing one or more of the
10  Plaintiff's Trademarks or any reproduction, copy, counterfeit or colorable
11  imitation thereof or any term(s) confusingly similar thereto, including
12  without limitation the marks "DOMESTIC ODDITIES," "BLACK
13  WIDOW," and/or "WHITE WIDOW";
14      (d)    displaying, advertising, or soliciting purchases, or causing to
15  be displayed, advertised, or solicited, any product or service under one or
16  more of the Plaintiff's Trademarks or any reproduction, copy, counterfeit
17  or colorable imitation thereof or any term(s) confusingly similar thereto,
18  including without limitation the marks "DOMESTIC ODDITIES,"
19  "BLACK WIDOW," and/or "WHITE WIDOW," over the Internet or
20  otherwise;
21      (e)    registering, maintaining, promoting, using, trafficking in, or
22  engaging in any activities (directly or indirectly) with any domain name,
23  web page name or URL which includes one or more of Plaintiff's
24  trademarks (listed in **Exhibit 1** hereto) or any reproductions, counterfeits,
25  copies or colorable imitations thereof or any terms confusingly similar
26  thereto, including without limitation the <domesticoddities.com>,
27  <domesticoddities.net> and <domesticoddities.org> domain names;
28

1088553.2                                6

1       (f)     maintaining, operating, or using (whether directly or indirectly) or inducing others (including, without limitation Affiliates) to maintain, operate, or use any web-page, home page, web site, website content (including, without limitation, that which appears on "hidden pages"), any code whatsoever (including but not limited to metatags, HTML, XTML, any computer code, domain names, URLs, sub pages, extensions, links, or any division or portion thereof, signs, banner ads, or any other visual media used in connection with any goods/business) that contains one or more of the Plaintiff's Trademarks or any reproduction, copy, counterfeit or colorable imitation thereof or any term(s) confusingly similar thereto, including without limitation the marks "DOMESTIC ODDITIES," "BLACK WIDOW," and/or "WHITE WIDOW" (as used in this document, the capitalized term "Affiliates" means third-party owned websites/domain names that link to one or more websites owned, hosted, and/or operated by one of more of the Defendants);

       (g)     obtaining, registering, transferring, assigning, licensing, authorizing use, or otherwise displaying (directly or indirectly) of any domain name or URL which includes one or more of Plaintiff's Trademarks (listed in **Exhibit 1** hereto) or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation the <domesticoddities.com>, <domesticoddities.net> and <domesticoddities.org> domain names, or undertaking any such activities to promote or utilize such domain names;

       (h)     identifying yourself (directly or through his Affiliates) or any of your products over the telephone or by any other media (including the Internet) or printed matter or signage as "International Oddities" or any confusingly similar term, or any reproduction, counterfeit, copy or

colorable imitation of the "International Oddities" designation, including without limitation the mark/trade-name "DOMESTIC ODDITIES";

(i) infringing, inducing others to infringe, or contributing to the infringement of any of Plaintiff's Trademarks (listed in **Exhibit 1** hereto) or otherwise engaging in unfair competition with IO in any manner or engaging in any conduct tending to falsely represent or likely to confuse, mislead or deceive suppliers, purchasers, or any member of the public into thinking that one or more of the Defendants or their Affiliates or their products originate from or are affiliated with IO or that IO has otherwise sponsored, approved, or licensed any products or services of any of the Defendants or their Affiliates;

(j) passing off, inducing or enabling others (including, without limitation, any of the Defendants' Affiliates) to sell or pass off any product not Plaintiff's or not produced under the control and supervision of Plaintiff as approved by Plaintiff for sale under one or more of Plaintiff's Trademarks (listed in **Exhibit 1** hereto); and

(k) committing or contributing to any acts calculated to cause purchasers to believe that any products not Plaintiff's are those sold under the control and supervision of Plaintiff, or are sponsored or approved or connected with, guaranteed or produced under the control and supervision of Plaintiff, or otherwise infringing, inducing others to infringe, or contributing to the infringement of any of Plaintiff's trade names or Plaintiff's Trademarks (listed in **Exhibit 1** hereto).

8. Defendants shall, upon execution of this Agreement, eliminate (and not thereafter resume use of) Plaintiff's Trademarks or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto from all labels, products, advertising, promotional materials, invoices, business cards, stationery, brochures, website content (including, without limitation, that which appears on

1 "hidden pages"), any code whatsoever including but not limited to metatags, HTML, XTML, any computer code, domain names, URLs, sub pages, extensions, links, or any division or portion thereof, signs, banners and all other visual media used in connection with their business and shall terminate its advertising of Plaintiff's Trademarks or any reproduction, copy, counterfeit or colorable imitation thereof in all third party media (including, without limitation, that of Defendants' Affiliates), including print advertising and the Internet.

9. Upon execution of this Agreement, each of the Defendants shall eliminate any content, including links, from any and all websites which they own, control, operate, have an association or affiliation with or on which it/they otherwise advertise that causes or tends to cause an Internet search engine to list or report a website – not selling goods that originate from or are otherwise authorized by Plaintiff – based on a search query that includes one of Plaintiff's Trademarks or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto.

10. Within five (5) days of execution of this Agreement, the Defendants shall cease to use the term "domestic oddities" as part of defendant Domestic Oddities Wholesale Distribution, LLC's entity name on any corporate records on file with any government agency, bank accounts, or other documents.

11. Within five (5) business days after the execution of this Agreement, Defendants shall:

    a) deliver to Plaintiff through Plaintiff's counsel an affidavit in which they shall identify by name, address, and telephone number all third party advertising media, in which Defendants have placed any advertisement bearing any of Plaintiff's Trademarks or any reproduction, counterfeit, copy or colorable imitation thereof, including, without limitation, DOMESTIC ODDITIES, BLACK WIDOW, and/or WHITE WIDOW; and

1088553.2

9

    b) cause Defendants' registrations of the <domesticoddities.com>, <domesticoddities.net> and <domesticoddities.org> domain names to be transferred to Plaintiff through the appropriate domain name authority and immediately provide Plaintiff with copies of all communications concerning Defendants' request for transfer.

  21. This Court shall retain jurisdiction to construe, enforce, and implement this Permanent Injunction.

  22. Plaintiff may issue subpoenas, pursuant to Fed. R. Civ. P. Rules 26 through 45, as appropriate to enable it to police and enforce compliance with this Permanent Injunction.

  23. The prevailing party in any proceeding to enforce the terms of this Consent Judgment and Permanent Injunction shall be entitled to recover the attorneys' fees and costs incurred therewith.

Dated: August 23, 2012

*Christina A. Snyder*
_____
The Honorable Christina A. Snyder,
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

# **EXHIBIT 1**

Reg. No. 3,001,848, registered on September 27, 2005 for the mark INTERNATIONAL ODDITIES; common law rights in INTERNATIONAL ODDITIES as a trademark and service mark for various smoking products, smoking accessories, dietary supplements, and retail and wholesale selling services relating to such goods; Reg. No. 2,284,977, registered on October 12, 1999 for the mark ULTRA WIZARD SMOKE; Reg. No. 3,120,347, registered on July 25, 2006 for the mark SKYSCRAPER; Reg. No. 3,186,133, registered on December 19, 2006 for the mark KRYPTO; Reg. No. 3,057,327, registered on February 7, 2006 for the mark DRO; Reg. No. 2,295,413, registered on November 30, 1999 for the mark STASHISH; Reg. 3,168,188, registered on November 7, 2006 for the mark BLACK WIDOW; Reg. 3,168,157, registered on November 7, 2006 for the mark STUNK; Reg. 3,053,633, registered on January 31, 2006 for the mark RASTA SMOKE; A'HIA for non-tobacco smoking-related products; BÁHLI BUBBLE BUD for non-tobacco smoking-related products; IO as a trademark and service mark for various smoking products, smoking accessories, dietary supplements, and retail and wholesale selling services relating to such goods; AFGANISH for non-tobacco smoking-related products; ALBINO RHINO for non-tobacco smoking-related products; BC DRO for non-tobacco smoking-related products; BLONDE STASHISH for non-tobacco smoking-related products; CRYSTAL BALL for non-tobacco smoking-related products; GOTALITE SPECIAL for non-tobacco smoking-related products; HERBAL BLACK "O" for non-tobacco smoking-related products; I.O. DRO for non-tobacco smoking-related products; KILLER STUNK for non-tobacco smoking-related products; KRYPTONITE SPECIAL for non-tobacco smoking-related products; MELTDOWN for non-tobacco smoking-related products; NE146 BUD for non-tobacco smoking-related products; O.P.N. for non-tobacco smoking-related products; O'REAM SMOKE for non-tobacco smoking-related products; PANAMA GOLD for non-tobacco smoking-related products; SHOTGUN 6-PACK for non-tobacco smoking-related products; SMOKE RING SPECIAL for non-tobacco smoking-related products; STANISH for non-tobacco smoking-related products; STANISH BLONDE for non-tobacco smoking-related products; STANISH ORIGINAL for non-tobacco smoking-related products; STANISH RED for non-tobacco smoking-related products; STANISH RESIN OIL for non-tobacco smoking-related products; STASH PACK for non-tobacco smoking-related products; SUPER HEX DROPS for non-tobacco smoking-related products; T-C-3 for non-tobacco smoking-related products; THAI LOPIUM OIL for non-tobacco smoking-related products; TRIPLE DECKER SPECIAL for non-tobacco smoking-related products; T*** STIX for non-tobacco smoking-related products; WIZARD BOX for non-tobacco smoking-related products; WIZARD MACHINE for non-tobacco smoking-related products; WIZARD SMOKE for non-tobacco smoking-related products; A'HIA for non-tobacco smoking products

(the "A'HIA mark"); BÁHLI BUBBLE BUD for non-tobacco smoking products (the "BÁHLI mark"); ICONOCLAST'S for herbs for smoking and various smoking accessories; BLACK BOA for herbs for smoking and various smoking accessories; HAWAIIAN CRUNCH for herbs for smoking and various smoking accessories; BLUNT LOADS for herbs for smoking and various smoking accessories; Registration No. 4161642 for the Mark AFTER BURNER for herbs for smoking and various smoking accessories; DELUXE DUTCH for herbs for smoking and various smoking accessories; Reg. No. 3,642,564, registered on June 23, 2009, for the mark JEL for dietary supplements; herbal supplements; Reg. No. 3,488,483, registered on August 19, 2008, for the Mark SEXTACY for dietary supplements; Registration No. 3057327 for the mark DRO for herbs for smoking and various smoking accessories.

**STIPULATION**

IT IS HEREBY STIPULATED by and between the parties to the within action that the foregoing Permanent Injunction By Consent With Respect To Defendants Domestic Oddities Wholesale Distribution LLC, A Nevada Limited Liability Company, Eric C. Fontenelle, An Individual, And Brett M. Mcspadden, An Individual will be abided by the signatories hereto and may be presented to the Court for approval and, when approved and signed by the Court, may be entered herein, all without further notice, and each party waives all right to seek review and appeal or otherwise therefrom.

Respectfully submitted,

DATED: 8/23/12

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

By: _____
MARK B. MIZRAHI (CA Bar No. 179384)

Attorneys for Plaintiff,
International Oddities, Inc.

DATED:

By: _____
BRETT M. MCSPADDEN, in his individual capacity and on behalf of Domestic Oddities Wholesale Distribution, LLC

DATED:

By: _____
ERIC C. FONTENELLE, in his individual capacity and on behalf of Domestic Oddities Wholesale Distribution, LLC

1088553.2

14

| | |
|---|---|
| 1 | Presented on August 23, 2012 by: |
| 2 | /s/ - Mark B. Mizrahi |
| 3 | _____<br>Mark B. Mizrahi Esq. (State Bar #179384)<br>mmizrahi@wrslawyers.com |
| 4 | Lance M. Pritikin, Esq. (State Bar #250754)<br>lpritikin@wrslawyers.com |
| 5 | Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP<br>11400 W. Olympic Blvd., 9th Floor |
| 6 | Los Angeles, California 90064<br>PH:  310-478-4100 Ext. 270 |
| 7 | FAX: 310-478-6363 |
| 8 | |
| 9 | Attorneys for Plaintiff,<br>International Oddities, Inc. |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |